THE OHIO WATER SERVICE CO., APPELLANT, *v.*
CITY OF CIRCLEVILLE, APPELLEE.

(No. 197—Decided February 6, 1947.)

*Messrs. Dunbar & Dunbar* and *Mr. Carl C. Leist,*
for appellant.

*Mr. Joseph W. Adkins, Jr.,* city solicitor, and *Mr.
Tom A. Renick,* for appellee.

METCALF, P. J.   In order to better understand the
issues involved in this appeal it is necessary to briefly
outline a prior proceeding had between the parties
hereto in the Common Pleas Court of Pickaway county
in an appropriation action by the city of Circleville
against The Ohio Water Service Company, being
cause Number 19162 in that court.

On December 4, 1944, the city of Circleville filed an application as provided by law for the assessment of compensation to be paid by that city for the water supply system then owned by The Ohio Water Service Company. This application set out the metes and bounds description of five parcels of real property together with the personal property which is enumerated as "all franchises, permits, consents, licenses, grants, privileges, immunities, leases, contracts of every kind and description and wheresoever situated in said county, together with all and singular the plants, buildings, improvements, additions, hereditaments, easements, whether owned by prescription or grant, right-of-ways, rights and other appurtenances. Also all the distribution mains, pipe lines, hydrants and service lines, meters, settings, equipment and all other property of The Ohio Water Service Company at Circleville, Ohio, of every kind, nature and description."

On May 3, 1945, the city and the water company entered into an agreed and stipulated inventory setting out specifically all the property for which compensation was to be assessed by the jury.

Thereafter a trial was had before a jury wherein the stipulated inventory of the personal property was used as the basis of the testimony as to the value of the personal property being appropriated; the jury returned a verdict on July 30, 1945, assessing the "compensation to be paid by the city of Circleville to The Ohio Water Service Company for its property set forth in the application and stipulated inventory herein at the sum of four hundred twenty thousand dollars ($420,000)."

On October 15, 1945, the court confirmed the verdict of the jury and adjudged that upon payment within six months by the city of the award, the city of

Circleville should take possession of the property heretofore mentioned and be vested with an absolute title therein in fee simple.

From that judgment of confirmation and order of possession, The Ohio Water Service Company filed its notice of appeal to this court on October 29, 1945. Thereafter on February 1, 1946, the Common Pleas Court suspended the execution of its order of October 15, 1945, so far as the same compelled the city to pay the award within six months therefrom, adjudging that the city should have a further period of six months from the final determination of the appeal then pending in this court.

On February 14, 1946, the water company dismissed its appeal and on July 10, 1946, within the six months period as ordered by the court the city paid to the clerk of courts the sum of $420,000, together with all costs on its part to be paid. Thereupon the court issued a writ of possession to the city placing it in possession of the property theretofore appropriated in the court using as a description in the writ a certified copy of the agreed and stipulated inventory. The city is now in possession and operating the water system so appropriated. Subsequent to the taking of possession of the water system by the city, the water company presented an itemized statement for money covering additions and expenditures to the plant since the hearing before the jury and also filed a motion to quash the writ of possession, which motion was overruled but neither of these latter actions on the part of the water company has any bearing on the issues in the instant appeal.

We come now to the subject of this appeal. On July 13, 1946, The Ohio Water Service Company filed its petition in the Court of Common Pleas of Pickaway county substantially relating the history of cause No.

19162 hereinabove set out, alleging three separate causes of action: First, to quiet the title in plaintiff to the property that was the subject of the appropriation proceeding involved in the foregoing cause No. 19162; second, for declaratory judgment adjudicating plaintiff's rights relative to the appropriation statutes and the equipment and property placed in the water system subsequent to the appropriation proceedings; third, asking that the city be enjoined from taking the company's property.

To that petition the city demurred on the following grounds:

"1. That the court has no jurisdiction of the subject matter of the action.

"2. That there is another action pending between the same parties for the same cause.

"3. The petition does not state facts which show a cause of action."

Upon hearing, the Common Pleas Court sustained the demurrer in all its branches and the plaintiff not caring to plead further judgment was entered accordingly dismissing plaintiff's petition from which this appeal on questions of law arises.

It is the contention of plaintiff, appellant herein, that the Common Pleas Court had no jurisdiction to make and enter its order of October 15, 1945, wherein it confirmed the verdict of the jury and adjudged the city of Circleville to be entitled to the possession and ownership of the waterworks system allegedly appropriated. Plaintiff takes this view on the sole ground that there is no provision of law authorizing a municipality to appropriate personal property, either separately or in connection with the condemnation of real property, for the purpose of a waterworks system. No claim is made of any defect in the legislative proceedings had by the city in appropriating the property

in cause No. 19162 and it is in effect conceded by the plaintiff in the instant case that if the city had authority to appropriate personal property for waterworks purposes and if jurisdiction is conferred upon the Common Pleas Court in such cases then the petition in the instant case is without merit; but plaintiff contends in substance that neither the city was authorized to appropriate the personal property of plaintiff nor was the court clothed with jurisdiction to issue any order relative thereto and for that reason the court's order of October 15, 1945, is void *ab initio* and, therefore, its petition in the instant appeal is good as against the demurrer.. It should be said at this point that plaintiff has abandoned its first cause of action, that of quieting title, but strongly urges, for the reason just hereinabove stated, that it is entitled to the relief sought by way of declaratory judgment and injunctive relief.

In support of its position plaintiff urges that the only authority for the appropriation proceedings had by the defendant, appellee herein, referred to must of necessity be predicated upon Sections 3677 to 3697, inclusive, General Code, which sections are found in Part First, Title XII, Division III, Chapter 1, of the General Code entitled "Appropriation of Property." And more particularly plaintiff claims that Section 3677, General Code, is applicable. The pertinent part of this section reads:

"Municipal corporations shall have special power to appropriate, enter upon and hold real estate within their corporate limits. Such power shall be exercised for the purposes, and in the manner provided in this chapter. * * *

"13. For providing for a supply of water for itself and its inhabitants by the construction of wells, pumps, cisterns, aqueducts, water pipes, dams, reservoirs,

reservoir sites and waterworks, and for the protection thereof; and to provide for a supply of water for itself and its inhabitants, any municipal corporation may appropriate property within or without the limits of the corporation; and for this purpose any such municipal corporation may appropriate in the manner provided in this chapter, any property or right or interest therein, theretofore acquired by any private corporation for any purpose by appropriation proceedings or otherwise. * * * ''

While this court does not agree that this statutory authority as outlined in the foregoing section is the only power or in fact the necessary power granted a municipal corporation authorizing it to appropriate property for a water supply, yet we feel called upon to construe that section as it applies or may apply to the proceedings had by the city of Circleville. It is clear to this court that, in order to give force and effect to the provisions thereof, the only reasonable interpretation and construction that can be placed upon subsection 13 above quoted is, that it was not only the intention of the Legislature to empower a municipal corporation to own and construct within or without its corporate limits all the necessary lands, buildings, wells, pumps, cisterns, pipes, dams, hydrants and all the other necessary accessories to the complete installation and maintaining of a water system from its source to the consumer, but that it was also the purpose and intent of the Legislature that the municipality be authorized and empowered to appropriate the complete utility or waterworks, if one was so functioning, not an incomplete part thereof, regardless of the nature of the property so long as it is a necessary part of the system of obtaining or producing; processing and delivering water to the municipality or its inhabitants. The section says that for this purpose the municipal

corporation may appropriate any property theretofore acquired by the private corporation for any purpose.

It would seem an idle gesture to authorize a municipal corporation to appropriate only real estate of a utility corporation, which corporation had already installed the necessary equipment to carry the water from its source to the city or consumer inhabitant and then compel the city on the one hand to reconstruct, to purchase anew or to parallel the lines or duplicate the equipment of the utility corporation or on the other hand to compel the utility corporation to give up by appropriation proceedings its real estate only and have remaining all and sundry the personal property and equipment necessary to carry on the many phases of obtaining, processing and delivering water. The injustice of such a construction of the statute under consideration should be patent to anyone.

The Legislature must have had in mind a situation as presented in the instant appeal when it deliberately used the words "any property" in subsection 13 in lieu of real estate or land. To give that subsection any other interpretation or construction would defeat the very purpose of its enactment.

In the opinion of this court the second paragraph of the above section wherein power is granted to municipal corporations to appropriate, to enter upon and to hold real estate within the corporate limits does not place a limitation upon the authority granted a municipal corporation under subsection 13 to own or appropriate "any property" within or without the limits of the corporation for a water supply. Both the situs and kind of property were changed in subsection 13 and the purpose for which it was changed, that of providing a supply of water for the city and its inhabitants, is clearly enunciated.

If Section 3677 does not yield to the construction we have placed upon it then it must fall as being inconsistent with the constitutional provisions found in Section 4, Article XVIII of the Constitution of Ohio. That section reads:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

Section 4, Article XVIII, along with the other sections of that article, became a part of the Ohio Constitution in 1912, known as the home-rule amendments. This section specifically grants the power to a municipality to acquire within or without its corporate limits any public utility the product or service of which is to be supplied to the municipality or its inhabitants. It specifically states that in acquiring this the acquisition may be by condemnation or otherwise. And in doing so the municipality acquires full title to the property, not just real estate, but all the property of the company supplying the municipality or its ininhabitants with the service or product of such utility.

Section 4, of Article XVIII has been before the Supreme Court of Ohio on several occasions and in each instance this section has been held to be self-executing. Plaintiff concedes this but claims that it gives no power to the municipality to exercise eminent domain in the absence of statutory enactment.

Keeping in mind that the section itself provides that, in acquiring any public utility the product or service of which is to be supplied to the municipality or its inhabitants, the same may be done by condemnation, we think the first paragraph of the syllabus in *Dravo-Doyle Co.* v. *Village of Orrville,* 93 Ohio St., 236, 112 N. E., 508, is in point. It reads:

"1. Section 4, Article XVIII of the Constitution, confers plenary power on 'any municipality' to acquire, construct, own, lease and operate any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and to contract with others for any such product or service."

It is urged by plaintiff that that is a contract case but the point in the holding, so far as it affects the instant case, is the fact that the Supreme Court definitely holds that this section confers plenary power on "any municipality" to acquire. It is interesting to note the comment of Judge Johnson speaking for the court on page 242 where he says, "The constitutional convention was not content to leave the subject of the public utilities of the cities and villages of the state entirely to legislation. It wrote into Article XVIII—the home-rule amendment—specific provisions touching that subject, including authority to acquire and operate such utilities, * * *."

In *State, ex rel. City of Toledo,* v. *Weiler,* 101 Ohio St., 123, 128 N. E., 88, the Supreme Court of Ohio again held that municipalities of the state are empowered by constitutional provisions to acquire any public utility, the product or service of which is to be supplied to the municipality or its inhabitants and further held that grant of power from the Legislature is not a prerequisite. On page 127 of that case Judge Matthias speaking for the court said: "Such author-

ity is conferred upon and may be exercised by every municipality regardless of whether or not it has adopt- ed a charter * * *." And then this pertinent comment follows: "This conclusion is warranted by reason of the broad and comprehensive terms of Section 4, Article XVIII, above referred to, for plenary power is thereby conferred upon each and every municipality of the state to deal with the subject * * *."

The fact that the court was dealing at that time with the power to levy taxes and issue bonds does not change the applicability of the ruling to the instant case because the court found the financing in acquiring a utility a necessary incident to the enjoyment of the power granted to acquire the utility.

In *Columbus* v. *Public Utilities Commission,* 103 Ohio St., 79, 133 N. E., 800, at page 124, Judge Johnson, in a concurring opinion, in referring to Sections 4 and 5 of Article XVIII of the Ohio Constitution, said, "By that amendment the municipalities of the state were given plenary power to deal with the subject involved in this controversy. Since that amendment they have full and exclusive authority in the making of contracts for the product or service of public utilities free from any supervisory or other control by the state. Those provisions are self-executing."

In *Priest* v. *Wapakoneta,* 24 Ohio Law Abs., 214, 32 N. E. (2d), 869, the Third District Court of Appeals for Ohio in an exhaustive opinion construes along with other sections, Section 4, of Article XVIII of the Ohio Constitution and it is there held that the various grants of power to municipalities under these sections relative to acquiring as well as financing public utilities, being express and exclusive delegations of power as to a particular subject, are subject only to the restrictions on the exercise of such powers contained in the provisions of the various sections of this

.article and that Section 4 along with the other sections therein mentioned are self-executing, permissive and plenary.

Therefore, from an examination of Section 4, Article XVIII of the Ohio Constitution, as well as from the great weight of authority, this court has no hesitancy in reaching the conclusion that if there was no statutory amendment whatever touching the subject the city of Circleville was fully authorized to pass the legislation and make application for the appropriation had in cause No. 19162. It must be understood, however, that we also reach the conclusion that Section 3677, General Code, although passed prior to the constitutional amendment under discussion, lends itself as being consistent with and not in conflict with this constitutional provision.

Having reached this conclusion, it would seem that there should be no difficulty in determining that the Common Pleas Court had jurisdiction in the appropriation proceedings. The Common Pleas Court is one of general jurisdiction. Section 4, Article IV of the Constitution of Ohio provides that the jurisdiction of the Courts of Common Pleas and all the judges thereof shall be fixed by law. Pursuant to that provision, Section 11215, General Code, provides that "The Court of Common Pleas shall have original jurisdiction in all civil cases * * *."

In addition to those provisions the chapter on appropriation herein referred to in Section 3681 sets forth the procedure, after the necessary legislation is passed by the city to carry the appropriation into effect, by making application to the Common Pleas Court, among other courts therein enumerated. It is true that this section sets forth that the application is to be made to the court in the county in which the land sought to be taken is located. We do not think that

the word "land" is controlling, as Section 3681 is in pari materia with and must be read in conjunction with Section 3677 of the same chapter. This latter section, providing that "any property" may be appropriated for a water supply, it necessarily follows that the court in the county where the property is situated to which the application is made has jurisdiction not only of the subject matter but of the parties as well.

The only position that is tenable in the instant appeal is that the city of Circleville was authorized to appropriate the property, that is the complete utility so appropriated, and that the Common Pleas Court had jurisdiction to enter the judgment and order attacked in the petition in the instant appeal. Under such circumstances the order of the court of October 15, 1945, placing the city of Circleville in possession of the property so appropriated upon the payment of the amount found due by the jury was lawful. Therefore, the allegations in the petition in the instant case raise questions that have been adjudicated and finally determined between the same parties and concerning the same subject matter and are therefore res judicata, and the appropriation proceedings cannot be so collaterally attacked.

There may be some question as to whether cause No. 19162 was still pending at the time plaintiff filed its petition in the instant case but that is a minor question and in no way affects the judgment of the trial court in sustaining the demurrer at least on the first and third grounds thereof.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

GILLEN and McCURDY, JJ., concur.