Edward WATKINS, Plaintiff,

v.

Herbert REED, et al., Defendants.

Jack BOWMAN, Plaintiff,

v.

Herbert REED, et al., Defendants.

Civ. A. Nos. 82–15, 82–28.

United States District Court,
E.D. Kentucky,
Covington Division.

Feb. 4, 1983.

Kenneth W. Scott and Harold L. Vick, Florence, Ky., for plaintiff.

Larry C. West, Covington, Ky., for Keith.

Joseph L. Baker and David B. Sloan, Covington, Ky., for Reed.

## MEMORANDUM OPINION and ORDER

BERTELSMAN, District Judge.

This case is based on events that occurred at the Greater Cincinnati International Airport (hereinafter the airport), which is located in Boone County, Kentucky. The plaintiffs in the two actions, which are consolidated for purposes of the ruling on the present dispositive motion, are taxicab drivers. The defendants are the President of the Airport Taxicab Association (hereinafter ATA) and the Director of Aviation for the Kenton County Airport Board (hereinafter the Board).

The plaintiffs were suspended from operating their cabs at the airport for having disobeyed a rule of the ATA. Both claim the ATA deprived them of a property right without according them due process in violation of 42 U.S.C. § 1983 (1976).[1] Though cab drivers could attend ATA meetings to protest suspension, the ATA had no formal notice and hearing procedure. As will be discussed more fully below, this court has determined that the ATA was not required to provide due process to the plaintiffs, since its acts did not constitute state action, as required by § 1983.[2]

## I. FACTS

To understand the premise underlying the plaintiffs' suits, it is necessary to explain the disparate roles played by the cab drivers, the ATA and the Board in the provision of taxicab service at the airport. The Board is a creature of county government, which a state statute has empowered with the ability to create local airport boards.[3] The Board itself operates as a local government unit, however, with powers comparable to those of a municipality.[4] Its chief purpose is to establish and operate airport facilities.[5]

The ATA came into being as the result of a provision in the license agreement each taxicab company doing business on airport property is required to sign. The agreement contains a promise that the company will "participate in and share the cost of a starter system for the orderly distribution of taxicabs at the various loading zones on airport premises." To facilitate the creation and maintenance of a "starter system," the ATA was formed. The ATA hired the Wackenhut Corporation to manage the "starter system." Each taxicab company serving the airport must be a member of the ATA. The board of directors consists of representatives from each of the companies. No members of the Airport Board or employees of the airport attend the ATA Board meetings or have any voice in its deliberations, including the actions complained of here.

The designation "starter system," as required by the license agreements, refers to the method used to organize the flow of

---

1. This statute provides in pertinent part: "Every person who, under color of any statute of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (1976). Its jurisdictional counterpart is 28 U.S.C. § 1343(a) (1976).

2. See United States v. Price, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966) ("In cases under § 1983, 'under color' of

law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment.").

3. Ky.Rev.Stat.Ann. § 183.132 (Baldwin's 1982).

4. Wadsworth Electric Mfg. Co., Inc. v. Kenton County Airport Board, Inc., 509 S.W.2d 270 (Ky.1974).

5. Ky.Rev.Stat.Ann. § 183.133 (Baldwin's 1982).

taxicab traffic in collecting and discharging passengers. According to the rules promulgated by the ATA to govern the starter system, taxicabs must remain in a parking lot-like holding area in the order of their arrival, depositing one dollar in the gate as they enter. The cabs are summoned to pick up passengers by a flashing light at the terminal entrance controlled by a Wackenhut employee. The first cab out takes the first passenger in the terminal pick-up area, the second the second, and so on, in orderly succession. The penalty for violating one of the rules governing the starter system is a 30-day suspension for the first infraction.

The plaintiffs were suspended by the ATA for allegedly not complying with the rules requiring drivers to pick up passengers in succession (Bowman) and to deposit a dollar upon each entry into the holding area (Watkins). Although they were informed of the suspension, no hearing was held. The plaintiffs filed suit, maintaining that the ATA was coextensive with the Board, a public body, and, therefore, since it was depriving them of a benefit, was required under the doctrines of due process to afford them formal notice and an opportunity to be heard. The matter is now before the court on the defendants' motion for summary judgment. The defendants argue that the plaintiffs were not entitled to notice and a hearing because the state action prerequisite of § 1983 has not been met. The plaintiffs argue the ATA acted under color of state law as required by § 1983 because there is a close nexus between the Airport Board and the ATA.

## II. ANALYSIS

■ For the reasons detailed below, the summary judgment motion, which is based on the assertion that there is no state action involved in these matters, must be granted. Section 1983 provides a civil action to protect persons against constitutional violations through state action but it does not protect against purely private actions.[6] Nevertheless, a private actor may be found to be a state actor for purposes of § 1983, if "there is a sufficiently close nexus between the State and the challenged action ... so that the action of the [private actor] may be fairly treated as that of the State itself."[7] Though in the present case there is some connection between the ATA and the Board, this court holds that it is not so close that the former's action may reasonably be attributed to the latter.

In three cases decided on June 25, 1982, the Supreme Court undertook to delineate what connections between state and private entities would suffice to transform private into state action.[8] Of these three cases, the court believes that the principles controlling the case at bar may be found in *Blum v. Yaretsky* more clearly than in the other cases, although their principles also apply. In cases of this kind two inquiries must be made. First, is there such mutual dependence (symbiotic relationship) between a governmental entity and a private party that the acts of the alleged private party may be considered governmental acts? Second, is there is a sufficiently "close nexus" between the challenged action and the state regulation that "it can be said that the *State is responsible for the specific* conduct of which the plaintiff complains."[9]

---

**6.** *Newsom v. Vanderbilt University,* 653 F.2d 1100, 1113 (6th Cir.1981), *citing Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). *See* the three cases decided by the Supreme Court on June 25, 1982, which are cited in note 8, *infra,* and a discussion of which follows in the text.

**7.** *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453–454, 42 L.Ed.2d 477 (1948).

**8.** *Rendell-Baker v. Kohn,* —— U.S. ——, 102 S.Ct. 2764, 73 L.Ed.2d 418; *Lugar v. Edmond-*

*son Oil Co., Inc.,* —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482; *Blum v. Yaretsky,* —— U.S. ——, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). It should be noted that, though *Lugar* furthers understanding of the state action concept, factually it is not similar to the present case. It concerned the use of a state-created rule by a private person acting with aid from state officials. *See* —— U.S. at ——, 102 S.Ct. at 2756–2757.

**9.** —— U.S. at ——, 102 S.Ct. at 2785–2786 (emphasis added). *See* discussion by Judge Kennedy in *Newsom v. Vanderbilt University,*

In *Blum v. Yaretsky* and *Rendell-Baker v. Kohn,* the Supreme Court tended to merge these inquiries and highlighted some of the factors to be considered in making these determinations:

1. Has the state so closely regulated the private entity that the action of the latter may be fairly treated as that of the state itself?[10]

2. Has the state "exercised coercive power or provided such significant encouragement, either overt or covert," that the action complained of must in law be deemed that of the state?[11]

3. Is the private entity exercising powers (public functions) that are traditionally the exclusive prerogative of the state?[12]

4. Has the state so financially assisted or otherwise cooperated with the private entity that a symbiotic relationship may be said to exist?[13]

■ The first factor, which concerns state regulation, indicates an insufficiently close nexus to support a finding of state action in this case. In *Blum,* the Supreme Court failed to find state action in the face of a large body of regulations because the state was not *"responsible"* for the decision of the private body employing the regulations.[14] The private body employed decision-making criteria not of the state's but of its own devising. In the present case, there is neither extensive regulation nor any hint of state responsibility. The license agreement requires that drivers be neat and courteous, submit to safety inspections and that cab companies maintain a starter system.

This latter rule has spawned a small group of rules governing the starter system, but these rules were created by the ATA and not the Board, and are enforced according to standards set by the ATA. The neatness and safety rules are also enforced by the ATA. The starter system requirement set out in the license agreements contains no suggestion as to the proper conduct of the system.

The second factor, the significant state encouragement test, would have required the Board to "put its own weight on the side of the ... [complained-of] practice by ordering it."[15] In *Blum,* even though the state inflicted punishment on the private body if the regulation in issue were not complied with, the Court found this was not coercive encouragement. Again, the Court found decisive the fact that, in applying state regulations, the private body exercised independent judgment.[16] Here, the Board has done nothing to approve or disapprove the ATA regulations. It has certainly not coerced the ATA into denying a formal hearing to suspended cab drivers. Its only connection with the lack of formal procedures, or the formation of the association which created the rules, is its requirement that the taxicab companies employ a starter system.

The third factor, whether the private body performs an exclusive public function, also fails to assist the plaintiffs in the present case, although they strongly rely on it. According to it, state action may be present when a private entity performs a function of government traditionally associ-

---

653 F.2d at 1113 ff. and by Judge Phillips in *Griffith v. Bell-Whitley Com. Action Agency,* 614 F.2d 1102, 1106 ff. (6th Cir.1980). Sometimes the Court treats the "close nexus" and "symbiotic relationship" tests as being separate and sometimes it tends to merge them. *See Jackson v. Metropolitan Edison Co., supra,* and the three 1982 cases cited in note 8, *supra.* Whichever approach is used, it is apparent there is no state action in this case.

**10.** —— U.S. at ——, 102 S.Ct. at 2785–2786.

**11.** *Id.* The Supreme Court indicates that "[m]ere approval of or acquiescence in the initiatives of a private party" is insufficient. *Id.*

**12.** *Id.*

**13.** *See Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

**14.** —— U.S. at ——, 102 S.Ct. at 2786–2787 (emphasis in original).

**15.** 419 U.S. at 357, 95 S.Ct. at 456–457.

**16.** *See.* —— U.S. at ——, 102 S.Ct. at 2772–2773.

ated with sovereignty, which has been delegated to it by a state or its political subdivision.[17] In the present case, a Kentucky statute has conferred on the board the obligation "to regulate the traffic ... of motor vehicles" on airport grounds.[18] As plaintiffs suggest, there is some sense in which the Board's requirement that cab companies maintain a starter system is a delegation of the Board's statutory duty to regulate traffic to a private entity, the ATA. The license agreement, requiring participation in the starter system, acknowledges that the starter system's purpose is to insure "the orderly distribution of taxicabs at the various loading zones on airport premises."

Nevertheless, the performance of a traditional state function by a private body is not in and of itself state action. The Supreme Court demands that the function be one " 'exclusively' reserved to the State." [19] Like nursing home services in *Blum*,[20] traffic regulation, the public function said to have been delegated to the ATA, lacks the element of exclusivity.

Generally, city and state traffic regulations have no application to the conduct of traffic on private ways and premises.[21] The private property owner is left with the task of regulating the flow of traffic when it leaves the public way and enters his domain. Thus, an unofficial body of traffic regulations exists for the many thousands of miles of parking lots and other private ways in the nation.[22] Off-street traffic regulation, therefore, if a public function, is not an exclusive one.

The facts also fail to give sufficient evidence of the fourth factor, financial or other cooperation. As it did in *Burton v. Wilmington Parking Authority*,[23] such a relation would have required not only mutuality of profit, but that the Board would suffer financially if the ATA did not engage in the complained-of practice.[24] In *Rendell-Baker v. Kohn,* this relation was found to be absent despite the state's provision of most of its operating costs to a private school, there being no mutuality of benefit.[25] In the present case, while there is some mutuality of profit, there is no claim the Board would lose this profit if hearings were provided. It is true the Board receives part of the dollar required by ATA rule to be deposited in the entry gate, though most of the dollar is used to operate the starter system. Nevertheless, the deposit rule is not the regulation of which the plaintiffs complain. They are challenging the failure of ATA rules to make provision for notice and hearings. Nowhere is it suggested that the Board profits financially from this conduct.

## CONCLUSION

In summary, it may be seen that all of the factors unsuccessfully asserted in *Blum* in support of a finding of state action are present here and likewise unsuccessful: regulations, some monetary subsidization, cooperation in day-to-day operations, and performance of a state function. Particularly apropos is the fact that here, as in *Blum,* the state agency caused the creation of an independent board that made the decisions which aggrieved plaintiffs. There, the Supreme Court found that the genuine independence of the Board prevented the presence of an aggregation of

**17.** 419 U.S. at 353, 95 S.Ct. at 454–455.

**18.** Ky.Rev.Stat.Ann. § 183.885 (Baldwin's 1982).

**19.** *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 158, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185 (1978).

**20.** —— U.S. at ——, 102 S.Ct. at 2789–2790.

**21.** *See* 7 Am.Jur.2d 155, *Automobiles and Highway Traffic,* § 204 (1980), for a discussion of the various incarnations of, and exceptions to, this rule.

**22.** *See, e.g., State of Hawaii v. Shak*, 49 Haw. 619, 425 P.2d 591 (Haw.1967) (state could not enforce penal sanction for disobeying unofficial no-parking sign). *See also* Ky.Rev.Stat. § 189.-337 (Baldwin's 1982).

**23.** 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

**24.** *Id.* at 723, 81 S.Ct. at 860–861.

**25.** —— U.S. at ——, 102 S.Ct. at 2772–2773.

elements of the factors outlined above from making the action complained of the *action of the state*.[26] The court is compelled to the same conclusion here. The action suspending the plaintiffs was that of a private entity. Therefore, the suspensions were not deprivations of rights under color of state law, which this court has power to redress under the Civil Rights Acts.

IT IS THEREFORE ORDERED that defendants' summary judgment motion be, and it is, hereby granted. A separate judgment is entered concurrently herewith.

---

**26.** *Id.* —— U.S. at ——, 102 S.Ct. at 2786–2787. The court is not convinced that the fact the decision-making body in *Blum* was composed of medical professionals dictates a different result when the private actor is a group of taxi-cab operators. The Supreme Court emphasized not the nature of the judgments employed but that they were based on independent standards *not* established by the state.