Tracey et al., Appellants, *v.* Preston, Director of Highways, et al., Appellees.*

*Judgment affirmed, 172 Ohio St., 567.

(No. 1001—Decided June 15, 1960.)

*Messrs. Hover, Smith & Shellhaas*, for appellants.

*Mr. Mark McElroy*, attorney general, and *Mr. Harry R. Pauline*, for appellees.

YOUNGER, P. J. The plaintiff, appellant herein, instituted an injunction action in the Court of Common Pleas of Logan County, Ohio, seeking to restrain the Director of Highways from proceeding in appropriation proceedings to obtain a small portion of land owned by her, for highway purposes. This proceeding results from previous actions by the Director of Highways in rerouting U. S. Route No. 33 through part of Logan County and making it into a limited access highway.

The plaintiff, appellant herein, is the owner of approximately 40 acres lying in the extreme northwest corner of Richland Township. Immediately to the west of plaintiff's land is county highway No. 95, which intersects new U. S. Route No. 33 at approximately the southwest corner of plaintiff's land. From this point U. S. Route No. 33 continues across Richland Township in a southeasterly direction. Thus, the new U. S. Route No. 33 cuts off some 500 to 600 feet from the southwest corner of plaintiff's land to the east. Immediately east and south of plaintiff's land are 89 acres belonging to a Mr. Shearer, which in the process of making U. S. Route No. 33 a limited access highway became landlocked. In the appropriation proceedings above referred to the director proposed to appropriate a strip of land out of the southwest corner of plaintiff's land and adjacent to the new U. S. Route No. 33, which tract of land is approximately 550 feet long with a maximum width of 80 to 85 feet and a minimum width of 35 feet and contains 72/100 of an acre. On this piece of land thus to be appropriated the director proposes to build a service highway 12 feet in width with 4 foot berms from the corner of Mr. Shearer's lands, such corner being made by the south boundary line of plaintiff's land and the northerly boundary line of U. S. Route No. 33 and extending west so as to connect with county highway No. 95, the director having deter-

mined it proper to have an intersection of U. S. Route No. 33 and county road No. 95 at that point.

From the action of the Common Pleas Court in dissolving the temporary restraining order and dismissing plaintiff's action, she has appealed to this court on questions of law and fact and the case was submitted to this court upon the testimony and exhibits introduced in Common Pleas Court, together with oral argument and briefs of counsel.

The plaintiff has made two assignments of error, as follows:

(1) The proposed appropriation is unconstitutional as it constitutes the taking of private property for private use only;

(2) The term "service highway" does not contemplate the taking of property of one person for the private use of another whose lands are being appropriated, but it contemplates the construction of a service road or lane within the property of the owner for whose benefit the road or lane is being built.

The solution to the questions here presented depends in large part on the construction of the third paragraph of Section 5511.02, Revised Code, which reads as follows:

"As an adjunct of any 'limited access highway' or 'freeway' the director * * * may lay out and construct highways and drives, to be designated as service highways, to provide access *from areas adjacent to a limited access highway* or freeway." (Emphasis added.)

It is necessary in construing this paragraph to also consider the definition of a limited access highway contained in the fourth paragraph of such section, which is as follows:

"A 'limited access highway' or 'freeway' is a highway especially designed for through traffic and over which abutting property owners have no easement or right of access by reason of the fact that their property abuts upon such highway, and access to which may be allowed only at highway intersections designated by the director."

The plaintiff's construction of the power given to the director "to provide access from areas adjacent to a limited access highway or freeway" may be more easily understood by quoting directly from several assertions made in her brief as follows:

"As we construe the statute and the cases which have considered it, the lane or drive (service highway) must lead to the limited access highway * * * in any case where the director by

appropriating a part of an owner's premises, in this case those of Mr. Shearer, he could deprive Mr. Shearer any access to the new highway in which case his premises would be 'landlocked,' and Mr. Shearer would have been entitled to damages by reason of the landlocking. The director could also have allowed Mr. Shearer access to the new highway and (if necessary), in order for Mr. Shearer to use the new highway the director could have constructed a lane or drive on Mr. Shearer's premises to provide access at such point as would be most suitable. In our opinion as quoted from *Rothwell* versus *Linzell* the director is limited to these alternatives * * * the operative words of the above statute support appellant's contention that a 'service road' must terminate within the right of way of the proposed highway improvement * * * the director at his discretion may pay damages to Mr. Shearer for such landlocking or he may purchase the landlocked premises and re-sell them.''

The construction of this statute was before the Supreme Court in the case of *Rothwell* v. *Linzell, Dir.*, 163 Ohio St., 517, and concerning the section here under consideration the Supreme Court said at page 525, ''the provisions of the third paragraph of Section 1178-21, General Code [Section 5511.02, Revised Code] were obviously enacted to remove any question with respect to the authority of the director to alleviate the consequence of his elimination of access to a limited access highway.''

In our opinion, the plaintiff greatly misconstrues the section under consideration in that she construes the latter part of the paragraph which reads, ''to provide access from areas adjacent to a limited access highway or freeway,'' as if the words ''areas'' and ''adjacent'' were interposed, so that under plaintiff's construction it would read ''to provide access from adjacent areas to a limited access highway or freeway.'' In our opinion it means to provide access from areas which are adjacent to, near to, or which abut a limited access highway or freeway. The language, quoted above from the Supreme Court, makes this latter construction mandatory. Limited access highways were authorized by the Legislature for the purpose of making traffic upon highways safer by limiting and prohibiting traffic, farm vehicles, etc., from entering such highway from every lane, driveway or gate along such route. The construc-

tion placed on that section by the plaintiff would entirely defeat such a purpose.

In the case before us, the director has declared and designated rerouted highway 33 to be a limited access highway in front of Mr. Shearer's land, and since he has no rights to an easement or right of access because his property abuts such highway his 89 acres are landlocked. If, as plaintiff contends, the service highway must enter rerouted U. S. Highway No. 33 the whole purpose of the Legislature in providing limited access highways would be frustrated. The position of plaintiff that the service road must come from the landlocked premises to the limited access highway is untenable.

The contention of plaintiff that this appropriation is not for a public use but is for a private use exclusively is likewise untenable. The Legislature has provided that service highways shall be an adjunct to limited access highways. Therefore, a service highway wherever constructed becomes a public use if it eliminates traffic hazards and makes the limited access highway safer and faster for all the public, including the plaintiff.

It is stated in 2 Nichols on Eminent Domain, Section 7.512 [1], Public Highways, at page 487, as follows:

"The public character of the road does not depend upon the degree of public necessity or convenience that require it or the extent to which the public uses it, or the number of persons that it accommodates, and it is no legal objection that a proposed highway will be a *cul de sac*, or that it will lead to the residence or place of business of but one individual, for the public may desire to visit or do business with him. * * * Streets are frequently layed out for the purpose of opening up private land, but if a street is to be open to public travel it is well settled that it is for the public use, although it is of special convenience or advantage to certain individuals * * *."

The same authority says, on page 445, in Section 7.221, as follows:

"* * * it is not the number of people who will participate in or benefit by the use for which the property is sought to be taken that determines whether the use is or is not public. * * *"

"* * * a public highway is unquestionably for the public use, and may be established by eminent domain even if it is probable that but one individual will use it, because the entire com-

munity can use it, and the one who does use it will use it as a member of the public."

And, in 29 Corpus Juris Secundum, 831, Eminent Domain, Section 34, it is stated:

"* * * the principle to be deduced from the cases bearing upon the question seems to be that if by a fair construction of the statute the road when layed out is in effect a public road, open to all who may desire to use it, it is a public use and the statute is valid, *although the road is primarily designed for the benefit of an individual* * * *. If the road is open to public use, the question of the number of persons who will in effect use it is comparatively immaterial.

"* * * A road is nonetheless public because it has its terminus * * * in an open field * * * or at a farm house." (Emphasis added.)

Under the Ohio Constitution the power of eminent domain may be used for "the public welfare," which we construe to be somewhat broader than "the public use," and the Supreme Court of Ohio in the case of *State, ex rel. Bruestle, City Solicitor,* v. *Rich, Mayor,* 159 Ohio St., 13, has said, at page 27:

"While the power of eminent domain may not be exercised merely or primarily to take private property for private purposes, there is no constitutional provision which limits the exercise of that power to a taking which will be exclusively for 'the public welfare' or for public uses or for public purposes. If, therefore, the primary purpose for the exercise of the power is to acquire the property for 'the public welfare' within the meaning of Section 19 of Article I of the Constitution, the power may be exercised even where there may be an incidental nonpublic use of the property or benefit from its taking. * * *"

It is a fundamental principle in the construction of a statute that the courts will construe the statute so as to avoid absurd consequences and so that the results may be reasonable and further the general purpose for which the statute was enacted. In this case a service road is an essential and integral part of the entire limited access highway project.

The argument that the public could make no use of the parcel in question or that Mr. Shearer would be the only one to use it is fallacious. Mr. Shearer could provide a fishing pond or hunting preserve and sell fishing or hunting rights to club

members or to the general public as is being done now in many places.  The fact that the proposed appropriation has a minimum width of 35 feet for the contemplated 12 foot strip indicates that the director has provided for future needs and expansion.  Even if the land remains solely for farming purposes while Mr. Shearer, his tenant or hired men are working on it, it might be necessarily used by doctors, nurses, ambulances, salesmen and many other business men and the farm organization representatives who call regularly on farm people, and by dealers for the delivery of feeds, fertilizer, lime or tile.

It is urged by the plaintiff that the director's authority, if he does not give Mr. Shearer access to U. S. Route No. 33, is to purchase these 89 acres and resell them.  Unquestionably the director has such authority, but in our opinion he has wisely executed his discretion in not doing so, as the state would be limited in prospective purchasers to two or three who own contiguous property.

In our opinion both plaintiff's assignments of error are without merit.

*Judgment for defendants.*

MIDDLETON and GUERNSEY, JJ., concur.