Charles H. STURGILL et al., Appellants,

v.

COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellee.

Court of Appeals of Kentucky.

Nov. 13, 1964.

Joseph J. Leary, Frankfort, Don Sturgill, Sturgill, Moreland & Turner, Lexington, for appellants.

Robert Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., H. C. Smith, Frankfort, and F. Selby Hurst, Lexington, for appellee.

CLAY, Commissioner.

In this condemnation proceeding appellants sought to enjoin the Commonwealth (Department of Highways) from taking a part of their land for use as an access road. The trial court denied the injunction and the correctness of this ruling is before us.

Appellants' property is situated somewhat southwest of the intersection of the Newtown and New Circle Roads in Fayette County. The Newtown Road runs north and south; the New Circle Road east and west. These are both heavily traveled highways. The Department of Highways prepared a comprehensive plan for the construction of interchange routes at this intersection. The design included three cloverleaf and other ramps.

One Robert Stilz owned land at the immediate southwest corner of this intersection. Under a lease a "Holiday Inn" motel had been erected thereon. The plans of the Department of Highways called for condemning a strip through the Stilz' property for the construction of a ramp, beginning near the front of the Holiday Inn on Newtown Road and extending westwardly to intersect with New Circle Road. This ramp, and the proposed designation of the Newtown Road as a nonaccess highway along the remaining frontage of the Stilz' property, would effectively cut off access from it to the Newtown Road, causing it to be "landlocked".

To alleviate this situation, and incidentally to save a substantial amount of money (to which Stilz would be entitled as condemnation damages), the highway plan called for a new access road *through appellants' adjoining land* from the Newtown Road to the southern boundary of the Stilz' property. (It extended into appellants' property 212 feet, with a 95 foot spur to the Stilz' boundary.) It was designed as a two-lane highway, will be maintained by the Commonwealth, and will be open for public use. In view of the present occupancy of the Stilz' land, this road will, and it was designed to, furnish access to and from the Holiday Inn motel.[1]

It is appellants' contention that the Commonwealth proposes to take their property for the private use of another in violation of their constitutional rights. The constitutional provisions allegedly violated are not definitely pinpointed, but sections 2 and 242 of the Kentucky Constitution are referred to. Section 13 would appear to play some part. In any event, it is conceded by the Commonwealth that appellants' property could not be taken for a private purpose and that the right to condemn this particular tract exists only if it is taken for a "public use". (This is required by KRS 177.230.)

Appellants' arguments are based upon general principles and not upon specific favorable decisions. The proposition

---

1. We refer to this present particular use of the Stilz' property because some of the witnesses did and because it tends to clarify the picture, but it is not a significant factor in resolving the question presented.

is stated that a private person cannot be authorized to condemn his neighbor's property for some exclusively private purpose or use. This may be acknowledged as sound. 2 Nichols on Eminent Domain, 3rd Ed., § 7.1(1), page 620; Chesapeake Stone Co. v. Moreland, 126 Ky. 656, 104 S.W. 762, 16 L.R.A.,N.S., 479; Hudgens v. Register, Ky., 285 S.W.2d 504. Based on this premise, it is contended the Commonwealth may not do for a private person and for a private purpose what he may not do himself. This also we may concede. The flaw in this argument is that it does not reach the very point in controversy, which is whether this taking, though subserving a private interest, is for a public use.

■ The proposed access road is part of a comprehensive and complex highway construction plan clearly designed fo- public accommodation. KRS 177.250 authorizes condemnation for access roads as incident to such a plan. Problems of necessity, proper design, best utilization of adjoining properties, convenience to the public, saving of expense, and promotion of traffic safety are matters which must be left to the discretion of the highway authorities. See KRS 177.240; and Luke v. Massachusetts Turnpike Authority, 337 Mass. 304, 149 N.E.2d 225. KRS 177.081 provides in substance that specific details of the plan cannot be called in question, from the standpoint of necessity or public use, except upon a showing of fraud, bad faith or abuse of discretion. No such showing was made in this proceeding.

■ Essentially appellants' position seems to be that public use presupposes a predominating public need, and where the private advantage substantially outweighs the public benefit it cannot be said a particular taking is for a public use. Appellants emphasize the fact that this road was basically designed to provide access to and from the premises of Stilz, and principally inures to his private benefit. But this is only part of the picture. Even if we examine the road in isolation, apart from the overall plan, appellants' argument does not take into account the dual aspect of public user.

Any public way naturally confers a special benefit on those persons whose property adjoins it. All roads terminate somewhere. Dead end streets or highways inevitably and particularly subserve the private interests of the last property owner on the line. Yet the public has an interest in reaching other members thereof. As a practical matter, the right of condemnation for highway purposes could not be made to depend upon the predominance of the public interest over private benefit. This is too fine a line even for legal draftsmanship. If this consideration were a determining factor, the condemnor would endlessly be forced to "battle in every county courthouse". See Commonwealth Dept. of Highways v. Burchett, Ky., 367 S.W.2d 262, 266. The accepted test is whether the roadway is under the control of public authorities and is open to public use, without regard to private interest or advantage.

This question was thoroughly examined and answered in Chesapeake Stone Co. v. Moreland, 126 Ky. 656, 104 S.W. 762. There a private person sought and was granted the right to condemn a strip of her neighbor's land for a tramway to her stone quarry (under a statute similar to KRS 277.040). It was pointed out that the special benefit to a private person attributable to the existence of a roadway is not a controlling factor, nor is it significant that few persons rather than a large number of the public may actually use it. We therein said (page 765 of 104 S.W.):

"It is not the number of people who use the property taken under the law of eminent domain that constitutes the use of it a public one; nor does the fact that the benefits will be in a large measure local enter into the question. In short, according to the generally recognized rule, the length of the public way, the places between which it runs, or the number of people who use it, is not

the essential inquiry. The controlling and decisive question is: Have the public the right to its use upon the same terms as the person at whose instance the way was established? If they have, it is a public use; if they have not, it is a private one."

Applying this test, the Commonwealth had the right to condemn appellants' property to construct the access road in question. This conclusion is amply supported by the following authorities: 2 Nichols on Eminent Domain (3rd Ed.), § 7.512(1), pages 705, 706, § 7.51211, page 716; 29 C.J.S. Eminent Domain § 34, page 831; Tracey v. Preston, 114 Ohio App. 206, 181 N.E.2d 479; Mueller v. Supervisors of Town of Courtland, 117 Minn. 290, 135 N.W. 996; Road Dist. No. 4 v. Frailey, 313 Ill. 568, 145 N.E. 195.

Appellants contend the last cited cases were decided under constitutions which differ from ours, and the questions considered involved the "public welfare" rather that "public use". We think the basic considerations were precisely the same.[2]

Our conclusion is based upon long recognized legal precepts which allow the government broad latitude in the development of public highways. Their utility is not for the courts to determine. That one member of the public specially benefits thereby does not impugn their public character if they are built for and open to public use. We find nothing illegal or unconstitutional in this taking and the circuit court properly denied injunctive relief.

The judgment is affirmed.

2. The concepts of "public welfare" and "public use" are closely related. Either term is logically convertible into the other. However, a serviceable distinction may be noted. The question of "public welfare" normally arises when determining whether the legislature had authority to grant a *general power* of condemnation to one of its agencies or even a private person (see KRS 277.040). The question of "public use" arises when we consider a *particular taking* under the granted power.