**WADSWORTH ELECTRIC MANUFAC-
TURING COMPANY, INC., Appellant,**

**v.**

**KENTON COUNTY AIRPORT BOARD,
INC., Appellee.**

Court of Appeals of Kentucky.

May 3, 1974.

Donald L. Stepner, Adams, Brooking &
Stepner, Covington, for appellant.

William P. McEvoy, Burlington, for appellee.

STEINFELD, Justice.

For the purpose of expanding its airport, appellee Kenton County Airport Board, Inc. condemned 3.6 acres of land in Boone County, which land was owned by appellant Wadsworth Electric Manufacturing Company, Inc. The "taking date" was September 8, 1970. From a judgment entered pursuant to a jury verdict awarding $57,750 to the landowner electric company, it appeals. We affirm.

The Kenton County Airport Board acquired, controls and operates the Greater Cincinnati Airport located in Boone County, Kentucky, which since 1942 has been the principal airport serving approximately one and one-half million people living in Cincinnati, Ohio; Covington and Newport, Kentucky; and the general area around those communities.

■ Wadsworth Electric challenges on three bases the claimed right of the Kenton County board to acquire, much less condemn, land outside of Kenton County.[1] It argues first, that the asserted power violates the Fourteenth Amendment to the Constitution of the United States; second, that it violates Section 13 of the Kentucky Constitution; and third, that extraterritorial eminent domain power is not authorized by KRS 183.133(4) and (5), a statute which vests condemning power in airport boards. The appellant apparently relies on that part of the Fourteenth Amendment to the United States Constitution which provides that no state may deprive the owner of his property without affording to him the due lawful processes, but appellant does not elaborate on this contention. We detect nothing in that amendment which prohibits the legislature from granting a local governmental unit the power to acquire and condemn land outside of its territory.

■ Wadsworth Electric concedes that its second ground was discussed and disposed of adverse to its position in Kenton County Fiscal Court v. Richards, 291 Ky. 132, 163 S.W.2d 302 (1942), in which we held that there was no constitutional provision preventing the legislature from granting to a county the authority to extraterritorially acquire land. We see no reason to depart from that ruling. After that decision the airport was established and has been operated continuously since that time by appellee.

In 1928 the General Assembly enacted the first law concerning the acquisition of land for " * * * an aviation field * * *." KS, Sec. 938j–7, Chap. 77, Sec. 7, Acts 1928. That Act authorized an airport board in counties containing cities of the first class to acquire by condemnation " * * * property anywhere *within* the county or city in which said board is created and acting * * *." (Emphasis added) When the statutes were revised in 1942, KS, Sec. 938j–7 became KRS 183.180 and as to airport boards appointed and acting in counties containing cities of the first class, it allowed them to condemn " * * * property *within* the city or county * * *." (Emphasis added) KRS 183.370 was adopted in 1942 (Chap. 10, Sec. 2). It provided as follows:

> "Any city of the second, third, fourth, fifth or sixth class, or any county or any such city jointly with the county in which it is located may acquire, either by

1. This issue was presented in Stillpass v. Kenton County Airport Board, Inc., Ky., 403 S.W.2d 46 (1966), but was not decided as the appeal was dismissed.

lease, purchase, gift or condemnation in the same manner as park property is condemned, any land necessary or suitable for establishing airports *within or without the limits of such city or county*. * * *." (Emphasis added)

Then airport boards in counties containing a city of the first class had no extraterritorial eminent domain power, but all other airport boards had that authority. Chapter 179 of the Acts of 1960, which was a revision of our laws with respect to aeronautics, repealed Chapter 183 of the Kentucky Revised Statutes and abolished the classifications of cities and counties on this subject. Section 33 of that Act became KRS 183.133. A minor amendment was made to subsection (4) in 1964 (Chap. 134, Sec. 6), at which time there were revisions of some of the statutes relating to aviation and the repeal of some of the others. Subsections (4) and (5) of KRS 183.133 then read and now read in pertinent part as follows:

"(4) The board may acquire by * * * condemnation * * * *any* real or personal property * * * for establishing, operating or expanding airports and air navigation facilities * * *.

"(5) The board * * * may by resolution reciting that the property is needed for airport or air navigation purposes direct the condemnation of *any* property, including navigation or other easements * * *." (Emphasis added)

Appellant points out that the quoted statute eliminates the words *"within or without* the limits of such city or county." (Emphasis added) It argues therefore that the power of appellee to condemn land extraterritorially was taken from it upon the repeal of KRS 183.370. Appellee, on the other hand, calls our attention to the word "any" which appeared in the 1942 Act and was continued in subsections (4) and (5) of KRS 183.133, and argues that the delet

ed words were superfluous. "The word 'any' is very broad and general * * *." Johnson v. Johnson, 297 Ky. 268, 178 S. W.2d 983 (1944). The word "any" was discussed at length in Elliott v. Pikeville National Bank & Trust Co., 278 Ky. 325, 128 S.W.2d 756 (1939). The comprehensive meaning of the words "any property" is revealed by the several cases cited in Words and Phrases, 3A, Permanent Edition, page 195. Cf. Walla Walla v. Clausen, 157 Wash. 457, 289 P. 61 (1930), and Ohio Water Service Co. v. City of Circleville, 82 Ohio App. 159, 81 N.E.2d 304 (1947).[2]

■ It is our opinion that if the legislature had intended to restrict the acquisition and condemning power to the confines of the county or city governmental unit or units creating the airport board, it would have retained the limiting language of KRS 183.180. We hold that the word "any" which appears in subsections (4) and (5) of KRS 183.133 authorizes an airport board to acquire, even by condemnation, any real property reasonably necessary for the establishment, operation and expansion of the airport wherever the land is located, so long as it is reasonably needed to serve the area for which the airport board was created.

We think it is significant that the current Act, as well as some of the previous Acts, authorized combinations of cities and/or counties to establish a joint airport board. KRS 183.132. Moreover, KRS 183.475 permits governmental units in Kentucky counties which are contiguous to counties located in foreign states to join with foreign governmental units in those border states to establish and maintain airports. Even more significant is the authority vested in those Kentucky governmental units to act alone in owning and operating airports in non-Kentucky counties. It is therefore apparent that all authorized airports could not be located ex-

2. For a discussion of the meaning of the word "any", see 3A C.J.S. p. 899.

clusively within the territory of the participating governmental units.

The 1960 revision of the statutes pertaining to aviation (Chap. 179, Sec. 36) provided:

"(2) The board may, as an alternative method and in addition to all other methods provided by law, acquire, construct, maintain, add to and improve airports and airport facilities and issue revenue bonds in connection therewith under the terms and provisions of Chapter 58 of the Kentucky Revised Statutes and under said law the term 'governmental agency' means the board and the term 'public project' means airports and airport facilities."

This section was numbered KRS 183.136 and, with minor amendments, is the law today. Chapter 58, which is known as the public project act, provides:

"A governmental agency acting separately or jointly with one or more of any such agency, may acquire, construct, maintain, add to and improve any public project as defined in KRS 58.010, which public project may be located within or without or partly within and partly without the territorial limits of such governmental agency or agencies, * * *." KRS 58.020.

By KRS 58.140, a governmental agency is given the power of condemnation. Also we note that KRS 183.740, which was originally adopted as Section 51 of Chapter 179 of the Acts of 1960 and was later amended, now reads in part as follows:

"KRS 183.630 to 183.730 shall constitute a method for the acquisition, construction, maintenance, expansion, financing or improvement of air navigation facilities or airport facilities or any part thereof or interest therein, or contract for services therefrom, by governmental units or the commonwealth in ad-

dition or as an alternate, to any other method authorized by statute. It is intended to authorize the acquisition, construction, maintenance, expansion, financing, or improvement of additional facilities for an airport acquired under authority of KRS 183.133 or interest therein, or contract for services therefrom, as well as the original acquisition, construction, maintenance, expansion, financing, or improvement of land and other facilities for an airport. * * *."

As heretofore stated, the Kenton County Airport Board has been the owner and operator of the Greater Cincinnati Airport in Boone County, Kentucky, continuously since 1942. It is apparent that under KRS 183.740 it has the authority to acquire additional facilities for that airport.

From the foregoing, we are of the opinion the trial court did not err in adjudging that the condemnation of the Wadsworth Electric property was authorized by law.

■ Wadsworth objected to the testimony of one of condemnor's witnesses because he referred to the adverse effect a highway then under construction would have on the commercial value of Wadsworth's property. It argues that only those things which existed on the date of the taking could be considered. The highway had not been completed on the date of taking, but its completion was imminent. This highway was some distance from and was unrelated to the project for which the condemnation was being processed.

■ Development in the general area in which a condemnation is taking place may have a material effect on the value of land, and we know of no reason why such a factor should not be considered in the determination of that value.

The judgment is affirmed.

All concur.