**CITY OF BOWLING GREEN,**
**Kentucky, Movant,**

v.

**T & E ELECTRICAL CONTRACTORS,**
**INC., Respondents.**

Supreme Court of Kentucky.

July 15, 1980.

David A. Lanphear, Safford & Satterfield, Bowling Green, for movant.

J. David Bryant, Harlin, Parker & Rudloff, Bowling Green, for respondent.

Charles D. Wickliffe, Dept. of Finance, Frankfort, for Commonwealth.

LUKOWSKY, Justice.

The question presented is whether a city of the second class has the authority to require that buildings owned by the Commonwealth situated within the city's boundaries conform to the municipal building code. We hold that the Commonwealth has not ceded such authority to those cities.

This controversy arose early in 1977 when agents of the City of Bowling Green decided to inspect the remodeling of a building on the Western Kentucky University campus for compliance with the municipal electrical code. Bowling Green also demanded payment of a $2,895.00 fee for the inspection. T & E Electrical Contractors and the Commonwealth denied the city's authority, asserting that construction inspections would be conducted under state auspices. Bowling Green unsuccessfully sought vindication in a declaratory judgment action. The Court of Appeals affirmed the trial court.

Bowling Green candidly concedes at the outset the general rule that a city possesses only those powers expressly granted by the Constitution and statutes plus such powers as are necessarily implied or incident to the expressly granted powers and which are indispensable to enable it to carry out its declared objects, purposes and expressed powers. *See, e. g., Griffin v. City of Paducah*, Ky., 382 S.W.2d 402 (1964). Further, it is also established that a city cannot regulate the construction or design of state owned buildings under the general grant of police power to cities. *Kentucky Institution for Education of the Blind v. City of Louisville*, 123 Ky. 767, 97 S.W. 402 (1906). In that case we stated: "The principle is that the state, when creating municipal governments, does not cede to them any control of the state's property situated within them, nor over any property which the state has authorized another body or power to control." 123 Ky. at 774, 97 S.W. at 404.

This is not to say that it is impermissible for the Commonwealth to grant to cities the authority to inspect and control the construction of state buildings. But it is clear that such power, when given, must be specifically delegated. *See Fiscal Court v. City of Louisville,* Ky., 559 S.W.2d 478 (1977).

Bowling Green asserts that the legislature has granted cities of the second class this power in KRS 84.240(2): "The city, through its officers and agents [and pursuant to the provisions of KRS 198B.060(1)], shall provide for the safe construction, inspection and repair of all private and public buildings in the city." (The bracketed language was added in 1978 to be effective August 31, 1979 and does not affect this controversy.) At first glance, the argument made by Bowling Green is seductive. However, when we pause to examine closely the history of this statute and apply the appropriate rule of statutory construction, the city's bait is not nearly so attractive.

The origin of KRS 84.240(2) is the general enabling act for cities of the second class passed by the 1894 General Assembly immediately following the adoption of our present Constitution. 1894 Ky. Acts 235, 255, ch. 100. Prior to that time the authority of each city was defined by an individual charter, i. e., special as opposed to general legislation. Consequently, the concept of a general grant of authority was new and its sweep yet to be measured.

The rule of construction to be applied is: "Statutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed, and should not be permitted to divest the state or its government of any of its prerogatives, rights, or remedies, unless the intention of the legislature to effect this object is clearly expressed." *Commonwealth, Department of Highways v. Hale,* Ky., 348 S.W.2d 831, 832 (1961); 82 C.J.S. *Statutes* § 391.

This background leads us to the conclusion that the legislature used the language "all private and public buildings" not for the purpose of subjecting state owned buildings (of which at that time there were few if any outside the capital city) to municipal regulations, but rather to make it clear that "private" structures where people do not ordinarily congregate were subject to inspection and regulation. Thus the statute was designed to make it clear that not only buildings where the public gathers such as theatres, restaurants, stores, hotels, sport arenas, saloons, dance halls, etc. are included, but that normally "private" premises such as homes, boarding houses, apartments, offices, etc., usually thought to be sacrosanct, were subject to the city's reach.

If the legislature desired to cede its power to regulate buildings owned by the Commonwealth, it would have said so expressly in words such as "all private and public buildings, including those owned by the Commonwealth or its subdivisions." It did not choose to do so. Consequently, the City of Bowling Green as a city of the second class has not been granted the power to inspect this building for electrical code compliance and it, certainly, can not require the state to pay for an inspection made gratuitously. *See Board of Regents v. City of Tempe,* 88 Ariz. 299, 356 P.2d 399 (1960); *Paulus v. City of St. Louis,* Mo., 446 S.W.2d 144 (1969); 7 McQuillin, *Municipal Corporations* sec. 24.519; 13 Am.Jur.2d *Buildings* sec. 7.

The decision of the Court of Appeals and the judgment of the Warren Circuit Court are affirmed.

All concur except STEPHENS, STERNBERG and CLAYTON, JJ., who dissent.

STEPHENS, Justice, dissenting.

I respectfully dissent. I believe that the wording of KRS 84.240(2) is clear, plain, and unambiguous. It states: "The city, through its officers and agents shall provide for the safe construction, inspection and repair of *all private and public buildings in the city.*" (emphasis added). The words "all . . . public buildings in the city" mean just that. They do not mean "all . . . public buildings, except those

owned by the Commonwealth," which is the strained interpretation applied by the majority. Buildings owned by the Commonwealth are public buildings. In *Lewis v. Commonwealth*, 197 Ky. 449, 247 S.W. 749, 751 (1923), we defined a "public building" as "belonging to or used by the public for the transaction of public or quasi public business, such as a schoolhouse, courthouse, or other similar one." *Accord, In Re Bacon*, 240 Cal.App.2d 34, 49 Cal.Rptr. 322 (1966); *Green v. State*, 30 Mich.App. 648, 186 N.W.2d 792 (1971); *Township of Scotch Plains v. Town of Westfield*, 83 N.J.Super. 323, 199 A.2d 673 (1964); *Black's Law Dictionary* (5th ed. 1979). I see no reason to limit the term only to "buildings where the public gathers," and to exclude publicly owned buildings, as the majority opinion elects. Buildings belonging to the public, through the state, as well as privately owned buildings used by the public are within the term "public building" as used in KRS 84.240(2).

I do not agree that the legislature would have specifically *included* state buildings had it intended them to be covered by KRS 84.240(2) as the majority suggests. Rather, I am convinced if the legislature had intended to *exclude* the Commonwealth's buildings from local police powers, it would have said so specifically. If it not our function to substitute our judgment for that of the legislature when the purpose of the legislation is expressed in plain language.

I therefore conclude that the City of Bowling Green has the authority to inspect any building within its city limits, including a building owned by the Commonwealth. I would reverse the decision of the Court of Appeals and the judgment of the Warren Circuit Court.

CLAYTON and STERNBERG, JJ., join in this dissent.