Mary A. MILES, Appellant/Cross Appellee,

v.

C. Leslie DAWSON, Secretary Transportation Cabinet, Commonwealth of Kentucky Transportation Cabinet, Commonwealth of Kentucky Finance and Administration Cabinet, Commonwealth of Kentucky, Evangel Tabernacle of the Assemblies of God, Inc., Appellees/Cross Appellants.

Nos. 90–SC–605–DG, 91–SC–007–DG.

Supreme Court of Kentucky.

Dec. 19, 1991.

Rehearing Denied June 25, 1992.

Theodore H. Amshoff, Jr., David W. Olive, Amshoff, Voyles & Johnson, P.S.C., Louisville, for appellant/cross-appellee.

John H. Davis, Jr., Transp. Cabinet, Marvin M. Sotsky, Stanley W. Whetzel, Jr., Taustin, Post, Sotsky, Berman Fineman and Kohn, Michael E. Krauser, Henry V. Sanders, Patricia A. Abell, Louisville, for appellees/cross-appellants.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed a summary judgment denying Miles the right to repurchase previously condemned property pursuant to K.R.S. 416.670.

Miles previously owned in fee simple a 15–acre tract of land in Jefferson County which is located on the northeast corner of the intersection of I–65 and the Outer Loop Road. In 1981, the State condemned the acreage for use in widening and improving the Outer Loop Road, I–65 and access roads. Valuation and compensation was decided by a circuit court jury, and title . was conveyed to the State through a Commissioner's Deed. There was a change in the State's plans and only 69 percent of the acreage was actually used for the development of the construction project, leaving

almost five acres unused for the originally contemplated public purpose. In 1986, Miles requested the State to comply with K.R.S. 416.670 and allow her to repurchase the unused portion of the property which is adjacent to her other property. The State advised Miles that it intended to convey the unused portion to the Evangel Tabernacle of the Assemblies of God, Inc. as part of an agreed settlement in another condemnation case which involved the church. Miles sought a declaration of rights and the circuit court dismissed the action by summary judgment without opinion. A majority of the Court of Appeals panel affirmed the Circuit Court Order and this Court granted discretionary review.

■ The specific question involves the right of a prior private property owner to repurchase that part of the condemned property not actually used for the public purpose originally designated pursuant to K.R.S. 416.670. This is a case of first impression.

The statute in question reads as follows: Development shall be started on any property which has been acquired through condemnation within a period of eight (8) years from the date of the deed to the condemnor or the date on which the condemnor took possession, whichever is earlier, for the purpose for which it was condemned. The failure of the condemnor to so begin development shall entitle the current landowner to repurchase the property at the price the condemnor paid to the landowner for the property. The current owner of the land from which the condemned land was taken may reacquire the land as aforementioned.

Application and interpretation of the words "any property" in the first sentence of the statute is part of the question. Miles argues that the State is not going to develop the five acre segment which she previously owned. The State contends that the words "any property" refers to a condemned tract in its entirety. The State claims that the development progressed on this property but the plans were changed as a matter of necessity. The State then changed its use of the land but still in furtherance of a public project and permissible because the land originally condemned was conveyed to the State in fee simple. They argue that the subsequent transfer of the unused section to another private owner did not amount to an improper act. A majority of the Court of Appeals panel agreed, saying that to hold otherwise would place a heavy burden on the Cabinet to anticipate its land needs within an impressively high degree of specificity so as to leave no remnant, no matter how small. The Court of Appeals panel added that determining a formula and mechanism for disposing of land fragments would force a burdensome result on the State which was a result that the legislature did not intend. We disagree.

The statute clearly states "any property which has been acquired through condemnation." K.R.S. 416.670(1). Evidently, the majority Court of Appeals panel has equated the word *any* with the word *all*. These words are not interchangeable. Any property is not synonymous with all the property to the exclusion of a part of the property. This jurisdiction has defined "any" as not being synonymous with "all." *See Elliott v. Pikeville National Bank & Trust Co.*, 278 Ky. 325, 128 S.W.2d 756 (1939); *Sally v. Baker*, 180 Ky. 833, 203 S.W. 724 (1918).

This Court is not unmindful of previous cases in which the word "any" was held to mean "all" or "every." *See Johnson v. Johnson*, 297 Ky. 268, 178 S.W.2d 983 (1944); *Wadsworth E.M.F.G. Co., Inc. v. Kenton County Airport Board, Inc.*, Ky., 509 S.W.2d 270 (1974). However, we do not believe these cases control the application of the word "any" in this situation because of the statute. *See Word and Phrases*, 3A C.J.S. for a further discussion of the meaning of the word "any."

Here the word "any" as contained in the statute relates directly to the legislative intent. The General Assembly could have omitted the word "any" or have used the word "all" if its intent had been to codify the construction used by the Transportation Cabinet. The construction and defini-

tion given by the Court of Appeals majority to the word "any" is inappropriate and leads to a misinterpretation of the statute in question.

■ The statute provides the State with a simple and direct method of giving property owners the right to seek return of property previously condemned and later determined to be unneeded for the project. The statute allows the State to make corrections for any mistakes it has made in anticipating its needs. A holding that any portion of the condemned land which is not developed by the State should be offered to the original property owner for repurchase is certainly not a burden on the State but is actually a benefit both to the Commonwealth and the citizen property owner which was clearly contemplated by the General Assembly in adopting the statute. The statute provides a reasonable formula for arriving at the price the landowner must pay. The pertinent part of the statute states that condemnee landowner is entitled to repurchase the property at the price the State paid to the landowner for the property. Implicit in this calculation is a pro rata method of determining the repurchase price. It does not require any complex computation and involves only a very rudimentary calculation. This section of the statute further supports the legislative intent to return unused property to its original owners.

The power to condemn property is an awesome power. *City of Owensboro v. McCormick*, Ky., 581 S.W.2d 3, 5 (1979) stated in part:

> Naked and unconstitutional governmental power to compel a citizen to surrender his productive and attractive property to another citizen who will use it predominantly for his own private profit just because such alternative private use is thought to be preferable in the subjective notion of the governmental authorities is repugnant to our constitution whether they be cast in a fundamental fairness component of due process or in the prohibition against the exercise of arbitrary power.

■ This situation differs from *McCormick* because in that case the principal issue was whether the specific use was a public use, but that issue does not arise here. Here the State stipulated that 30 percent of the condemned property was not needed. No further public use as originally contemplated by the State was undertaken, and the State attempted to transpose a broad public necessity argument to support its transfer of the property to another private party, the church. The denial of the repurchase request by Miles was based entirely on the theory of convenience to the State in settling other litigation with Evangel. It has been previously noted by this Court that mere convenience is not a sufficient justification for the condemning authority to act as a land broker for private interests. *Cf. Commonweath, Dept. of Transportation v. Knierem*, Ky., 707 S.W.2d 340 (1986).

The position of the State as endorsed by the Court of Appeals majority could seem reasonable. However, a view of the history of the spirit of other case law in Kentucky discloses a different pattern. In *McCormick*, this Court found unconstitutional the Kentucky Local Industrial Authority Act because it authorized a government agency to compel a private owner to surrender his property which would then be transferred to a different private use. *McCormick* stated in part:

> The Court has always ... consistently recognized the necessity of protecting the right of a citizen to be secure in his ownership of property. Governmental compulsion to surrender his property must always be accompanied by a payment of just compensation and be affected for a public use.

The Court went on to say that the constitutional provisions involved showed that a finding of public purpose does not satisfy the requirement of a finding of public use. Here, the undeveloped tract was used as an object of barter because it helped settle other litigation involving the project. However, there was no proper public use as contemplated by the statute.

In *Knierem, supra,* the State condemned two strips of land from a private owner. One strip was actually used in developing the roadway. The second was transferred to a different private owner to provide access because a previous easement had been taken by the State. The effect was to landlock the second owner's property. A unanimous court held that the taking of the second strip of land from one private owner, for the purpose of restoring an easement to a different private owner was unconstitutional.

*Maze v. Com., Dept. of Highways,* Ky., 461 S.W.2d 72 (1970) involves a condemnation of property for a roadway that was developed through the center of the tract. There was residue property on either side of the roadway which remained undeveloped. The prior owner sought to repurchase. The facts differ from this case in two ways. First, the Commonwealth speculated that it had a future use for one tract. The second difference is that the statute relied on by Miles in this case was not in effect at the time of the *Maze* decision.

The State relies on a number of cases which hold that courts cannot review the exercise of discretion of a condemning authority unless that body has acted arbitrarily or in excess of its authority. *Commonweath v. Burchett,* Ky., 367 S.W.2d 262 (1963); *Sturgill v. Com., Dept. of Highways,* Ky., 384 S.W.2d 89 (1964); *Com., Dept. of Highways v. Vandertoll,* Ky., 388 S.W.2d 358 (1965). The State argues that it is exercising the authority given to it within the statute. Miles claims that it is failing to do so. There is no case applying the statutory words. In our view the question of discretion does not arise in the interpretation and application of this statutory system as enacted by the General Assembly.

It is the holding of this case that Miles as the condemnee has a statutory right of redemption pursuant to K.R.S. 416.670 to that part of the real property originally condemned but not developed for the purpose for which it was condemned.

The decision of the Court of Appeals is reversed, the summary judgment for the Commonwealth is set aside, this matter is remanded to the circuit court with directions that the summary judgment for Miles be sustained.

STEPHENS, C.J., and COMBS, LAMBERT and LEIBSON, JJ., concur.

LAMBERT, J., also concurs with a separate concurring opinion in which STEPHENS, C.J., and LEIBSON, J., join.

REYNOLDS, J., files a dissenting opinion in which SPAIN, J., joins.

LAMBERT, Justice, concurring.

In my view, two facts are decisive to the outcome of this case. First, the Commonwealth made an unqualified determination that the five-acre parcel was "surplus," and then it agreed to convey the parcel to a private party to settle other litigation. These facts remove any reasonable dispute as to the applicability of KRS 416.670 and the result achieved by the majority is mandated.

Despite my concurrence, I do not believe the majority intends an interpretation of the statute which will require the Commonwealth to re-convey every scrap or remnant of land it takes but does not actually use for a public purpose. The language of KRS 416.670 requires "development" but does not require actual use. Such terminology is consistent with broad executive discretion and should be so construed.

STEPHENS, C.J., and LEIBSON, J., join in this concurring opinion.

REYNOLDS, Justice, dissenting.

Respectfully, I dissent.

Interpretation of KRS 416.670 by the majority opinion involves an imaginative projection of an express purpose which the legislature did not provide and which it did not have in mind. A recitation of the applicable sections of the statute aforesaid is as follows:

**Limitation on condemnation powers— Rights of current landowner.—(1)** Development shall be started on any proper-

ty which has been acquired through condemnation within a period of eight (8) years from the date of the deed to the condemnor or the date on which the condemnor took possession, whichever is earlier, for the purpose of which it was condemned. The failure of the condemnor to so begin development shall entitle the current landowner to repurchase the property at the price the condemnor paid to the landowner for the property. The current owner of the land from which the condemned land was taken may reacquire the land as aforementioned.

(2) Any condemnor who fails to develop property acquired by condemnation or who fails to begin design on highway projects pursuant to KRS Chapter 177 within a period of eight (8) years after acquisition, shall notify the current landowner of the provisions of subsection (1) of this section. If the current landowner refuses to purchase property described in this section, public notice shall be given in a manner prescribed in KRS Chapter 424 within thirty (30) days of the refusal, and the property shall be sold at auction. Provided, however, that this section shall not apply to property acquired for purposes of industrial development pursuant to KRS Chapter 152.

The words of the statute are clear and we should not add to or alter them to accomplish a purpose that does not appear on the face of the statute nor from its legislative history.

The majority contends that the statute compels the Cabinet to offer back for repurchase any portion of condemned land which is not developed. The use of the word "any" is broad and general. It is used wherein it excludes either selection or distinction and in construing statutes the word "any" means "all." *Words and Phrases*, 3A Permanent Edition, p. 59; *Johnson v. Johnson*, 297 Ky. 268, 178 S.W.2d 983 (1944); *Wadsworth Electric Manufacturing Co., Inc. v. Kenton County Airport Board*, 509 S.W.2d 270 (1974). It is respectfully suggested that the majority opinion cites with unerring correctness the cases where the word "any" has been and has not been used to mean "all" and

brings unwarranted emphasis upon antebellum definitional authority. The appellant contends that the statute compels the Cabinet to offer back for repurchase any portion of condemned land which is not developed. To the contrary, the statute directs only the return of condemned property to the landowner if public development has not been undertaken on the property within eight years.

The statute provides that the failure of the condemnor to so begin development shall entitle the current landowner "to repurchase *the property* at *the price* condemnor paid to the landowner for the property." The statute recites no formula nor does the wording thereof imply, suggest, involve or comprise a pro rata method of calculating or determining the repurchase price of a portion or an unused slice or sliver of land. It is error to conclude that the calculation of all land prices is a rudimentary computation.

Perhaps it should be reemphasized that the purpose for the taking of appellant's property was neither disputed nor contested and that over 69% of the 15–acre tract was ultimately used for the development of the construction project. It was only after the acquisition of the fee simple title that the highway plans were altered, resulting in the excess property. The Commonwealth has heretofore been permitted to utilize some latitude in the use of condemned property and may consider design and convenience as well as expense in determining how the land shall be used. *Sturgill v. Commonwealth, Department of Highways*, Ky., 384 S.W.2d 89 (1964). It is submitted that the question of public use or private use depends on the purpose of the initial taking and not on the nature of the Cabinet's actual use of any excess acreage. The purpose of the statute is to provide a remedy in a situation where a project has been planned, a taking has occurred, and a subsequent abandonment or complete change of a highway development plan has thereafter occurred. Projects are developed, changed, altered and abandoned for a myriad of reasons and the statute purposefully fills a gap designed for resto-

ration of the whole property to the original party (landowner) or successor. The statute is in derogation of sovereignty and is to be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed and should not be permitted to divest the Cabinet of any of its prerogatives, rights or remedies unless the intention of the legislature to effect this object is expressed. *City of Bowling Green v. T & E Electrical Contractors, Inc.*, Ky., 602 S.W.2d 434 (1980).

I would affirm the opinion of the Court of Appeals.

SPAIN, J., joins in this dissent.