CITY OF COVINGTON, Kentucky,
Appellant,

v.

Raymond L. HARDEBECK and
Hilda Hardebeck, Appellees.

No. 93–CA–000475–MR.

Court of Appeals of Kentucky.

May 20, 1994.

Discretionary Review Denied by
Supreme Court Sept. 21, 1994.

Ronald L. McDermott, Covington, for appellant.

Robert E. Sanders, Covington, Nicholas M. Nighswander, Edgewood, for appellees.

Before GARDNER and SCHRODER, JJ., and VANCE, Special Judge.

SCHRODER, Judge:

This is an appeal of a civil action brought for the return of a parcel of real estate acquired from appellees by the appellant/city through eminent domain. The circuit court held the reversionary clause in KRS 416.670 was applicable and ordered a portion of the property returned to the original owners.

In December of 1981, the City of Covington (the City) filed an eminent domain proceeding against Raymond and Hilda Hardebeck to condemn their property for the purpose of expanding Goebel Park in Covington, Kenton County, Kentucky. The property included a building and a free-standing billboard which was, and is still, leased for a Holiday Inn ad. The condemnation action was tried to a jury, which awarded a total of $120,000 to the Hardebecks for their property. The award was not broken down into the amounts given for the land, building, and fixtures, although the jury was presented with such evidence. Final judgment was entered on March 24, 1983, after the City earlier took possession of the property on February 12, 1982. On April 18, 1983, the Hardebecks executed a quitclaim deed, conveying what interest they had in the property to the City.

In order to fund the expansion of Goebel Park, the City sought financing from federal and state sources. The City was told that in order to receive financing, it had to remove a Holiday Inn sign located at the northwest corner of Ninth and Philadelphia Streets on a tract of the Hardebecks' former property

since the sign was deemed as not being compatible with outdoor recreation. Instead, the City excepted "the land upon which the Holiday Inn sign is located" from the Goebel Park expansion project by Covington Commissioners' Order/Resolution No. R–456–84. The precise boundaries of that "land" are set out on plats and drawings of record that were submitted by the City to state and federal government (TR, pp. 39–40). The same lease and rental use is being made of the billboard that the Hardebecks made of it prior to the condemnation.

Pursuant to KRS 416.670(1), the Hardebecks filed suit on February 11, 1992, to exercise their right to repurchase the billboard property since it had not been committed to a public use within eight (8) years of its condemnation. They also demanded recovery of rents paid to the City for lease of the billboard property since it took possession on February 12, 1982. On January 21, 1993, the Kenton Circuit Court entered a partial summary judgment in favor of the Hardebecks. Pursuant to KRS 416.670(1), the judgment required the City to retransfer the tract of land upon which the billboard sits. The judgment also required the Hardebecks to repay the City an amount of money to be determined by a fixed formula. The judgment, however, specifically "reserved for separate consideration" the issue of recovery of backrent and stated that "[t]his is a final judgment and there is no just cause of delay." The City appeals. No one questions and we do not doubt that this is a final order.

The appellant/City does argue a number of reasons for reversing the trial court's summary judgment. Arguments A, C and D all deal with determining the use of the land, or how much was used for the billboard and the application of *Miles v. Dawson,* Ky., 830 S.W.2d 368 (1991).[1]

KRS 416.670(1) states as follows:

Development shall be started on any property which has been acquired through condemnation within a period of eight (8) years from the date of the deed to the condemnor or the date on which the condemnor took possession, whichever is earlier, for the purpose for which it was condemned. The failure of the condemnor to so begin development shall entitle the current landowner to repurchase the property at the price the condemnor paid to the landowner for the property. The current owner of the land from which the condemned land was taken may reacquire the land as aforementioned.

The only case interpreting KRS 416.670(1) is *Miles v. Dawson, supra.* In that case, Miles, the former owner of condemned land, brought an action pursuant to KRS 416.670(1) to reacquire approximately five (5) acres of a fifteen (15)–acre tract of land not used in a highway construction project. The Kentucky Supreme Court held that Miles had a statutory right to repurchase that part of the condemned property [the five (5) acres] not actually used for the public (highway) purpose originally designated. The Court rejected the state's interpretation of "any property" in KRS 416.670(1) as referring to the condemned tract in its entirety. The Court stated that the legislative intent was to return "any" unused property to its original owner. *Id.* at 370.

■ Obviously, the appellant/City can prevail only if the facts of the present case are meaningfully distinguishable from those presented in *Miles.* We find no such distinction. We note that in *Miles* the state stipulated that a substantial portion [thirty percent (30%)] of the condemned property was not needed for the condemned purpose. *Id.* at 370. In the present case, in Commissioners' Order/Resolution No. R–456–84 "[t]he land upon which the Holiday Inn sign is located is excluded from the Goebel Park Phase III

---

1. CR 76.03(6) states that: "A party shall be limited on appeal to issues in the prehearing statement except that when good cause is shown the appellate court may permit additional issues to be submitted upon timely motion." The City argues in its brief that it in fact "developed" the subject property as that term is used in KRS 416.670(1). The City mentioned in its prehearing statement that "The Appellant further contends that the property which was *allegedly* not used for its condemnation purpose is minuscule in amount and not subject to the provisions of KRS 416.070." (Emphasis added.) It is unclear whether the City's express refusal to admit that the property was not used for its condemnation purpose was tantamount to raising that issue in its prehearing statement. We shall give the City the benefit of this doubt.

Project." The land is surrounded by an access area which would naturally be included within the scope of R–456–84. There is no genuine issue of fact as to the City's failure to develop the "land" for public park purposes. It is therefore subject to KRS 416.-670(1).

We also note that in *Miles* the state attempted to transfer the property to another private party, the Evangel Tabernacle of the Assemblies of God, Inc., to settle litigation with it arising from the highway construction project. *Id.* at 369 and 370. The rationale underlying *Miles* was that "mere convenience is not a sufficient justification for the condemning authority to act as a land broker for private interests." *Id.* at 370. In the present case, though the state has not attempted to transfer the fee to the property to another private party, only a lease, we do not see this as a meaningful distinction. Were we to hold otherwise, the state could circumvent the *Miles* result by simply transferring a leasehold rather than a freehold interest in the property to a third party, as in fact occurred in the present case.

The City is correct when it asserts that the property that was not developed for public park purposes is minuscule in size relative to the entire amount originally condemned. However, the City relies on the concurring opinion of Justice Lambert to the effect that:

> [I] do not believe the majority intends an interpretation of the statute which will require the Commonwealth to re-convey every scrap or remnant of land it takes but does not actually use for a public purpose.

*Id.* at 371.

This is Justice Lambert's concurring opinion. Justice Wintersheimer, writing for the Court, made no such distinction so we cannot find that distinction was a holding in the case. Even if there was such a distinction, the trial court found the unused portion in the case *sub judice* was sufficient to sustain the private enterprise, the billboard.

■ The City argues in B. that the Hardebecks intended, by giving a quitclaim deed, to waive their rights under KRS 416.670(1). This is obviously incorrect. The only purpose of the quitclaim deed was to effect the purposes of the condemnation action and nothing more. No additional or different consideration was paid by the City. The Hardebecks, at the time the deed was executed, had no way of knowing that the City would except any part of their property from the expansion of Goebel Park. They did not consent to the taking of their land. They merely cooperated with the court and executed the deed after the jury verdict rather than force the court to order the master commissioner to do so on their behalf. Furthermore, the Hardebecks had no cause of action against the City that could have been extinguished at the time the deed was executed since the eight (8)–year period of nondevelopment pursuant to KRS 416.670(1) had not yet begun to run. There is no genuine issue of material fact raised with respect to the quitclaim deed. The cases mentioned by the City in its brief are so obviously distinguishable on factual grounds that they do not merit discussion.

■ The City's argument, E., alleges the trial court erred in giving the formula for calculation of the amount of the purchase price to be returned to the City in exchange for the billboard land. We are aware that in *Miles* all the condemned land had approximately the same value, whereas in the present case the billboard property is worth far more. We do not necessarily find this "very rudimentary calculation" to be fairly applied in this case, but we feel constrained by *Miles* where the Court provided:

> The statute provides a reasonable formula for arriving at the price the landowner must pay. The pertinent part of the statute states that condemnee landowner is entitled to repurchase the property at the price the State paid to the landowner for the property. *Implicit in this calculation is a pro rata method of determining the repurchase price.* It does not require any complex computation and involves only a very rudimentary calculation.

*Id.* at 370 (emphasis added.)

■ Appellant's final argument, F., is that the trial court erred in granting summary judgment where there were material issues of fact. The trial judge's entry of partial

summary judgment pursuant to CR 56.03 was proper in all respects. The calculation of repurchase price is a matter of law, not a finding of fact. The trial judge properly included it in his partial summary judgment whether requested or not by the Hardebecks. The trial judge's determination of the amount of land to be returned to the Hardebecks was precisely the amount requested by the Hardebeck's in their original complaint: "the land excepted from Goebel Park ... more particularly described on the plats or site maps attached hereto as 'Exhibit 1' and 'Exhibit 2' to this complaint." There are no other issues of law or fact.

For the foregoing reasons, the trial judge properly entered partial summary judgment and that judgment is affirmed.

All concur.