**Dudley P. YAHNIG, Appellant,**

v.

**CITY OF SOMERSET, Kentucky and Pulaski County, Kentucky; On behalf of the Somerset–Pulaski County Airport Board, Appellees.**

No. 2002–CA–000538–MR.

Court of Appeals of Kentucky.

May 2, 2003.

Discretionary Review Denied
April 15, 2004.

Larry Sword, Sword & Broyles, Somerset, KY, William G. Bertram, Bertram & Wilson, Jamestown, KY, for appellant.

William M. Thompson, Frederick G. Neikirk, John T. Mandt, Somerset, KY, Joe Lynn Travis, Daniel G. Yeast, Travis, Pruitt & Lawless, Somerset, KY, for appellee.

Before HUDDLESTON, PAISLEY, and TACKETT, Judges.

## OPINION

TACKETT, Judge.

Dudley Yahnig appeals from an order of the Pulaski Circuit Court granting summary judgment in favor of the City of Somerset, Kentucky, and Pulaski County on behalf of the Somerset–Pulaski County Airport Board (Airport Board). We affirm.

Dudley Yahnig and his brother, Richard, originally acquired a sixty-six acre parcel of farmland on the north side of Kit Cowan Road in Pulaski County in 1949. Yahnig received Richard's interest in the property by conveyance in 1958 and continued to farm the property up until the time it was condemned. The Airport Board condemned the property through eminent domain on July 20, 1992, for the purpose of expanding the existing airport facilities. This expansion was necessitated by the increasing industrial growth in Pulaski County. Due to the airport's location, there was no suitable land on the north side; therefore, the Airport Board needed to acquire land on the south side, some of which was owned by Yahnig.

The Airport Board drafted a master plan outlining three stages of the expansion project with the final stage to be completed in 2010. Under this plan, the main terminal facilities, fuel tanks, ramps, public parking areas and hangars would be moved to the south side of the runway. In addition, the runway itself would be extended by 1,000 feet in order to accommodate larger aircraft. Funding for these projects was coming from the Federal Aviation Agency (90%), the Commonwealth of Kentucky (5%) and local agencies (5%). The Yahnig property was needed as a source of fill dirt to level the terrain on the south side of the runway and for the construction of taxiways, ramp areas, a terminal building, fuel facilities, hangars and an access road.

After condemning the property, the Airport Board leased it for farming while preparation for construction began. Yahnig was offered the first opportunity to lease his former property, but he refused and the Airport Board's tenants were raising soybeans on the property while it was being cleared for construction. The Airport Board expended $19,500.00 to remove

a fence, several buildings and some trees and to clean up junk left around two structures.

In 2001, Yahnig filed an action for declaratory judgment and redemption of property, pursuant to Kentucky Revised Statute (KRS) 416.670, arguing that the Airport Board had not begun development of the condemned property within eight years as mandated by statute. In addition, Yahnig asked for an injunction restraining the Airport Authority from beginning development on the property after the complaint was filed. During a hearing on Yahnig's motion for an injunction, the Airport Authority moved for summary judgment on his redemption claim. The Pulaski Circuit Court entered an order granting summary judgment in favor of the Airport Authority finding that its efforts in clearing the condemned property amounted to the beginning stages of development. This appeal followed.

Yahnig argues that the Airport Authority failed to begin development on the condemned property within the statutorily prescribed period and that he is entitled to repurchase the sixty-six acre parcel. KRS 416.670 provides the following right to reclaim condemned property:

Development shall be started on any property which has been acquired through condemnation within a period of eight (8) years from the date of the deed to the condemnor or the date on which the condemnor took possession, whichever is earlier, for the purpose for which it was condemned. The failure of the condemnor to so begin development shall entitle the current landowner to repurchase the property at the price the condemnor paid to the landowner for the property. . . .

The Airport Authority condemned the property in 1992, and Yahnig filed his action for redemption in 2001, nine years after his property was acquired by the Airport Authority. He contended that the Airport Authority's actions in removing a fence, structures, trees and junk from the property do not amount to the beginning stages of development, but rather were done to facilitate the use of the property as farmland which was not the purpose of its condemnation.

Summary judgment is only properly granted by a trial court where there are no genuine issues of material fact. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476 (1991). Yahnig and the Airport Authority are in agreement on the relevant facts, i.e., what actions were taken by the Airport Authority between the time it acquired the property and the filing of Yahnig's redemption action; where the parties differ is in whether those actions constituted the beginning of development within the period mandated by KRS 416.670.

There are very few Kentucky cases construing this statute's redemption provisions. The parties cite four decisions interpreting this statute: *Miles v. Dawson,* Ky., 830 S.W.2d 368 (1991), *City of Covington v. Hardebeck,* Ky.App., 883 S.W.2d 499 (1994), *Kelly v. Thompson,* Ky., 983 S.W.2d 457 (1998), and *Coleman v. City of Pikeville,* Ky.App., 994 S.W.2d 524 (1999). However, each of these cases is factually distinct from the situation at hand. In *Miles,* the property owner had a fifteen acre tract of land condemned in Jefferson County, Kentucky, for the expansion of I–65 and the Outer Loop Road. At the conclusion of the project, only 69% of the condemned land had actually been used and Mary Miles sought to redeem the remaining property pursuant to KRS 416.670. The Commonwealth of Kentucky refused to allow her to repurchase her land because it wished to convey the property to a church in order to settle a lawsuit. The Kentucky Supreme Court found that Miles had a statutory right to redeem

any portion of her land not used for the purpose for which it was condemned.

In *City of Covington*, the property owners sought to redeem a tract of land condemned for a public park. A portion of the property contained a billboard which the owners were renting to Holiday Inn. When the City was informed that it could not keep the billboard within the park and receive state and federal aid, it exempted the tract containing the billboard from the park and continued to lease the sign. On appeal, we determined that the City had failed to develop that tract of land and, in fact, was putting it to the exact same use as the property owners had done. Therefore, the property owners were entitled to repurchase that portion of their land.

The issue in *Kelly* was whether the legislature intended KRS 416.670 to apply retroactively to land condemned prior to its enactment but not developed within eight years. In that case, we held that the failure of the condemnor to **begin** development within eight years triggered the redemption provision in KRS 416.670. Finally, in *Coleman* we upheld the City of Pikeville's refusal to resell a portion of property not used for a public purpose to the original owners. The City had argued that dumping 66,000 feet of fill dirt on the 1.348 acre parcel of property at public expense constituted the beginning stages of development within the meaning of KRS 416.670. We agreed and additionally held that the previous owners, who sold their interests **under threat of condemnation,** had no statutory right of redemption. Yahnig, in contrast, did not voluntarily sell his property, rather it was condemned in order to allow the Airport Authority to acquire it.

Yahnig argues that *Miles* and *Kelly* offer support for his position that he is entitled to redeem the property in that the Airport Authority has not begun development on any portion of the condemned property. In addition, he contends that the Airport Authority's action in leasing his former property as farmland maintains the use to which he previously put the land; therefore, under our holding in *City of Covington*, he is entitled to repurchase the land. This argument ignores the Airport Authority's uncontested measures to prepare the land for construction such as removing a fence, buildings, trees, and junk. Yahnig contends that these actions were done to facilitate farming the land; however, since all of those structures remained in place when Yahnig was farming the land, the Airport Authority contests this interpretation of its actions. Moreover, the Airport Authority argues that its tenants maintain the land in a cleared condition which is a prerequisite to construction.

*Kelly v. Thompson* held only that development must be started on condemned property within eight years, not completed. The trial court noted that the master plan did not call for the airport expansion to be complete until 2010. In assessing the development on the property acquired from Yahnig, the trial stated as follows:

In regards to the Yahnig property, it specifically was needed for two major purposes. First, fill dirt was needed to level the rolling terrain on the south side of the runway. Second the property was needed for the actual construction of taxiways, ramp areas, terminal building, fuel facilities, hangars and access roads into the new terminal area on Kit Cowan Road. In order to prepare the Yahnig property for all the excavation, grading and movement of dirt, it first needed to be cleared. What has been done to clear the Yahnig property so that it could be properly excavated and graded is "1. The tearing down and removal of a small shop and a large 30 × 100 foot shed where the cattle were fed; 2. The tearing down and removal of a large 60 × 100 foot barn; The cleaning

up of junk and trash around a silo and a milk house; 4. The removal of trees near the barn; 5. The removal of old fence rows with brush and trees; and 6. The removal of various other trees on the property." The total expenditures from 1992 [through] 1997 [were] approximately $19,500.

Moreover, the trial court specifically stated that *Coleman v. City of Pikeville* was supportive of its finding that these actions constituted the beginning stages of development pursuant to KRS 416.670. We agree and, consequently, uphold the trial court's determination that Yahnig is not entitled to repurchase his former property from the Airport Authority.

For the forgoing reasons, the judgment of the Pulaski Circuit Court is affirmed.

ALL CONCUR.